## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**JAMES HULLUM,**

       Plaintiff,

v.                            **CASE NO. 3:04-CV-902-J-16MCR**

**UNITED STATES OF AMERICA**

       Defendant.

_____/

### O R D E R

Before the Court is the issue of the discretionary function exception discussed in Defendant's Response in Opposition to Plaintiff's First Motion for Partial Summary Judgment (Dkt. #33 at 16-19).  Defendant asserts in its Opposition that Plaintiff claims that Defendant's inaction caused his injuries to occur.  Defendant contends that to the extent Plaintiff's claims are based upon the discretionary decisions of the United States Navy on how to allocate its limited human resources, such claims are not within the jurisdiction of this Court as the Public Vessels Act, 46 U.S.C. app. §§ 781-790 ("PVA"), implicitly contains the discretionary function exception.

The Plaintiff was given leave to file a reply to this issue, which was filed June 12, 2006 (Dkt #44).  In its reply, Plaintiff asserts that its claims are not based upon the discretionary decisions of the United States Government on how to allocate its limited resources; rather, it specifically alleges that the Government negligently failed to conduct regular inspections, resulting in a failure to discover and correct the dangerous conditions and that it failed to maintain a reasonably safe premise and working environment.  The Plaintiff also states in its reply, that should the Court find that the discretionary exception does apply, that the Government has not met either prong of the discretionary function exception.

**Discussion**

The Court recognizes that "[i]t is a well-settled axiom that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued.'"   Mid-South Holding Co., Inc. v. United States, 225 F.3d 1201, 1203 (11th Cir. 2000) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)).  The waiver of the United States' sovereign immunity must be "unequivocally expressed in statutory text" and cannot be implied. Lane v. Pena, 518 U.S. 187, 192 (1996)(internal citations omitted).  The Eleventh Circuit has stated that "[b]oth the PVA and the Suits in Admiralty Act (SAA). . .contain broad waivers of sovereign immunity. . . ." United States Fire Ins. Co. v. United States, 806 F.2d 1529, 1534 (11th Cir. 1986).  The waiver of sovereign immunity in admiralty actions, however, is subject to the discretionary function exception identified in the Federal Tort Claims Act, 28 U.S.C. § 2680(a).  See Mid-South Holding Co., 225 F.3d at 1204 (noting the Eleventh Circuit "is among the majority holding that the SAA's waiver of immunity is subject to the discretionary function exception.")(internal citations omitted).  The discretionary function exception limits the United States' waiver of sovereign immunity by providing that sovereign immunity remains against:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

The United States Supreme Court has developed a two-part test to determine whether the challenged conduct falls within the discretionary function exception.  See United States v. Gaubert, 499 U.S. 315, 322-23 (1991); Theriot v. United States, 245 F.3d 388, 397 (11th Cir. 1998).  The first part of the test requires a determination as to whether the challenged conduct involves an element

of judgment or choice.  See Powers v. United States, 996 F.2d 1121, 1124 (11th Cir. 1993).  The requirement of judgment or choice is not satisfied if a federal statute or regulation "'specifically prescribes a course of action for an employee to follow.'" Gaubert, 499 U.S. at 322 (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1959)). See Powers, 996 F.2d at 1124 ("Or, as this circuit has stated the converse of this proposition, 'if a government official in performing his statutory duties must act without reliance upon a *fixed or readily ascertainable standard*, the decision he makes is discretionary and within the discretionary function exception.'")(internal citations and quotations omitted).  The next step is for the court to determine if the judgment "is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322-23 (quoting Berkovitz, 486 U.S. at 536). The purpose of the exception is to "'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" Id. at 323 (quoting United States v. Varig Airlines, 467 U.S. 797, 814 (1984)).

For the first part of the test, the Court notes that neither party has presented a regulation, statute or policy that establishes a fixed or readily ascertainable standard for ensuring the safety nets remained in place while the KENNEDY was undergoing repairs (Dkt. #32 at 19). See Powers, 996 F.2d at 1124-25 ("The relevant inquiry is whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner.").  The Court instead finds that the conduct of the Navy personnel did involve elements of judgment or choice.  Indeed, the Weapons Department Head, Cdr. King, declared that he took into account several factors when deciding "how to address the problem of contractors removing the nets. . . ." (Dkt. #32, Exhibit E, Declaration of Cdr. King, ¶15).  After weighing these various factors, Cdr. King "decided that the Weapons Department would increase its inspections of the trunks spaces and regularly remind those

persons who needed to access the trunks that the safety nets should be replaced." Id. ¶16.  Cdr. King states he thought that punitive measures such as barring the contractors from the ship or requiring that they be escorted, "would only end up costing the Navy money in the form of reduced production from the contractors and/or reduced ability of my service members" to perform the tasks assigned to them during the KENNEDY's overhaul. Id. ¶15.  As was previously discussed, Mr. Daley also states that he identified steps that Ltd. Cdr. Martin made to remedy the safety nets situation.  See (Dkt. #24, Exhibit 2e, Deposition of Mr. Daley at 33 & Exhibit 2a, Deposition of Lt. Cdr. Martin at 49).  As a result, and in light of the fact the Court finds no regulations, statutes or policies prescribing a readily ascertainable standard for ensuring the safety nets remained in place while work was being done on the KENNEDY,  the first part of the test has been met.

Next, the Court must determine whether the judgment afforded the Navy in how it addressed the removal of the safety nets is the type of judgment the discretionary function exception was designed to shield. See Gaubert, 499 U.S. at 322-23.  Defendant contends that the Navy had to balance multiple and competing demands for its resources during a time of limited manpower. In other words, it had to balance between providing safety and completing the KENNEDY's work requirements.  The Court notes that when it was discovered the safety nets were being partially removed, the issue was addressed with the contractor supervisors and it was reported in the daily production meetings.  See (Dkt. #32, Exhibit E, Declaration of Cdr. King, ¶14)("I personally reminded contractors of their responsibility for restoring the nets at the daily production meetings and I was present at several production meetings where my second in command. . .reminded contractors to replace all safety nets. . . .").  Based upon the foregoing, the Court finds that the decisions made by the Navy regarding the issue of the safety nets and resource allocation are exactly

the type of decisions the discretionary function exception protects from judicial "'second-guessing.'" <u>Varig Airlines</u>, 467 U.S. at 814.

As such, to the extent that the discretionary function exception is claimed by either party, the Court finds the second prong also fulfilled and the discretionary function exception is applicable. This being the case however, as the Court stated in its Order denying summary judgment (Dkt #41), potential liability may still exist under the Longshore and Harbor Workers' Compensation Act. Based on the decision in <u>Scindia Steam Nav. Co., Ltd. .De Los Santos, 451 U.S. 156 (1981)</u>, there exists genuine issues of material fact as to the position of the Deck 6 safety net, as to whether the Defendant was in exclusive control of the safety nets, and whether the Defendant had constructive knowledge as to the placement of the safety net between the 6th and 7th decks.  Therefore,

Accordingly, upon due consideration, it is hereby **ORDERED and ADJUDGED** that

1.   The discretionary function, to the extent that it is alleged, is applicable; and the Court determines that it has no subject matter jurisdiction over the discretionary function of the allocation of resources of the Navy;

2.   Genuine issues of material fact remain as to those non-discretionary functions of negligence and constructive knowledge; therefore, the case will proceed to a bifurcated non-jury trial, scheduled for the trial term commencing August 7, 2006

**DONE AND ORDERED** at Jacksonville, Florida this ___22nd___ day of June, 2006.

JOHN H. MOORE II
United States District Judge

Copies to: Counsel of Record